CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 11 2012

JULIA C. DUDLEY, CLERK
BY: /s/ Blevins
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CITY NATIONAL BANK, a national banking association, as acquirer of certain assets from the Federal Deposit Insurance Corporation acting as receiver of Imperial Capital Bank, <br><br> Plaintiff, <br> v. <br><br> MOISHE TRESS & YEHUDA DACHS, <br><br> Defendants. | Civil Action No.: 7:11-cv-73 <br><br> **Memorandum Opinion** <br><br> By: Hon. James C. Turk <br> Senior United States District Judge |

This matter is before the Court on Plaintiff's unopposed Motion for Summary Judgment (Dkt. No. 13) as to Defendant Dachs.[1] Although Dachs has been given ample opportunity to respond, he has not done so. Both City National Bank and Dachs have indicated that oral argument is unnecessary and the matter is now ripe for disposition. For the reasons set forth below, the Motion for Summary Judgment is **GRANTED**.

I.   FACTUAL AND PROCEDURAL BACKGROUND

The usual practice on a motion for summary judgment is to construe the facts in the light most favorable to the non-moving party, see Seabulk Offshore, Ltd. v. Am. Home Assur. Co., 377 F.3d 408, 418 (4th Cir. 2004); however, because the Motion for Summary Judgment is unopposed, all facts are taken from the Motion for Summary Judgment. On December 27, 2006, Imperial Capital Bank loaned $3,200,00.00 to Roanoke Holdings, LLC ("Roanoke Holdings").

---

[1] Defendant Tress is in the process of being served. Therefore, the Court will only address the Motion as to Defendant Dachs.

1

Defendants Tress and Dachs, on behalf of Roanoke Holdings, signed a promissory note ("Note") in favor of Imperial Capital Bank, promising to repay the loans on the terms and conditions stated therein.

As a condition of Roanoke Holdings receiving the loan, Imperial Capital Bank also required personal guaranties from Defendants Tress and Dachs ("Guaranty"). Defendants agreed to pay the monies due under the note, should Roanoke Holdings default.

At all times relevant to this matter, Plaintiff City National Bank, a national banking association, as acquirer of certain assets from the Federal Deposit Insurance Corporation acting as receiver of Imperial Capital Bank, is and/or was the owner, holder, and/or person entitled to enforce the Note and Guaranty.

On or after November 1, 2009, Roanoke Holdings ceased making payments on the Note and Defendants Tress and Dachs have not made any payments as personal guarantors of the Note.

## II.   LEGAL STANDARD

Summary judgment is appropriate where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although Defendant Dachs has failed to respond to the Motion, leaving it unopposed, this does not relieve Plaintiff of the burden imposed by Rule 56(a).

> Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to "a judgment as a matter of law." The failure to respond to the motion does not automatically accomplish this. Thus, the court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.

Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993). The moving party bears the burden "to show initially the absence of a genuine issue concerning any material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

## III. ANALYSIS

Because the Court's jurisdiction is based on the diversity of the parties, the Court applies the choice of law rules of Virginia, the forum state. "Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances." Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 624 (4th Cir. 1999). Because the parties chose Virginia law in the contract,[2] the Court will apply Virginia substantive law.

Under Virginia law, a guaranty is

> an independent contract, by which the guarantor undertakes, in writing, upon a sufficient undertaking, to be answerable for the debt, or for the performance of some duty, in case of the failure of some other person who is primarily liable to pay or perform. In an action to enforce an independent contract of guaranty, the obligee is proceeding on the guaranty, not on the underlying note. Thus, to recover on a guaranty, the obligee must establish, among other things, the existence and ownership of the guaranty contract, the terms of the primary obligation and default on that obligation by the debtor, and nonpayment of the amount due from the guarantor under the terms of the guaranty contract.

McDonald v. National Enterprises. Inc., 547 S.E.2d 204, 207 (Va. 2001) (internal citations omitted).

Plaintiff has met its initial burden of showing the absence of a genuine issue of material fact. Plaintiff has produced the contract by which Dachs agreed to the personal guaranty. (See Dkt. No. 14, Ex. C.) Dachs chose to "absolutely, unconditionally and irrevocably guarantee[] to

---

[2] Under Section Fourteen (14) of the Guaranty, the guaranty "shall be governed by the laws of the jurisdiction in which the Land is located (the "Property Jurisdiction")." (Dkt. No. 14, Ex. C, at § 14.) Under paragraph B of the Guaranty, terms not defined in the Guaranty are defined as in the Security Instrument. (Dkt. No. 14, Ex. C, at ¶ B.) Under paragraph A of the Guaranty, the Security Instrument is the deed of trust executed by Roanoke Holdings, LLC (Dkt. No. 14, Ex. B, at ¶ A), in the favor of the original lender to secure the repayment of the note. (Dkt. No. 14, Ex. C, at ¶ A.) In section 1(t) of the Security Instrument, the term "Land" is defined as the land described in Exhibit A thereto, which is in Roanoke, Virginia. (Dkt. No. 14, Ex. B, at § 1(t).)

Lender the full and prompt payment when due." (Id. at ¶ B, § 2.) The terms of the Note and Guaranty are clear and unambiguously demonstrate the terms of the agreement. It is undisputed that Roanoke Holdings, LLC, defaulted on the loan. Defendant Dachs' signature appears on the Note and the Guaranty and a notary public attested to his signature on the Guaranty. The Court finds that Dachs signed the personal Guaranty and is therefore personally responsible for the loan made to Roanoke Holdings, LLC.

## IV.   DAMAGES/LIABILITY

In its request for damages, Plaintiff alleges that it has suffered damages in the amount of $2,482,621.05 as of October 17, 2011, with interest thereon at the contractual rate of eighteen (18) percent per annum until fully paid. The Court has examined the contract (Dkt. No. 14, Ex. A), the affidavit proving damages (Dkt. No. 14), and other relevant documents and finds the Plaintiff's unopposed request for damages to be the proper measure. Therefore, the Court grants summary judgment to Plaintiff in the amount of $2,482,621.05 as of October 17, 2011. The proper rate of interest, however, is a more difficult matter.

Plaintiff has stated that the contractual default rate of 18% is the proper measure of damages. In this diversity action, the Court also applies Virginia law as to prejudgment interest. See Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 633 (4th Cir. 1999) ("Virginia law governs the award of prejudgment interest in a diversity case."); United States v. Dollar Rent A Car Sys., Inc., 712 F.2d 938, 940 (4th Cir. 1983) ("[S]tate law applies to questions involving prejudgment interest in diversity cases.) (citing cases). The applicable Virginia statute governing prejudgment interest is Va. Code Ann. § 8.01–382. Whether prejudgment interest should be awarded under § 8.01–382 is a matter within the sound discretion of the district court. See Hannon Armstrong & Co. v. Sumitomo Trust & Banking Co., 973 F.2d 359, 369 (4th Cir. 1992);

4

Dairyland Ins. Co. v. Douthat, 449 S.E.2d 799, 801 (Va. 1994). As to the proper interest rate, § 8.01–382 provides that for negotiable instruments, the rate of interest shall be that "rate specified in the instrument." It is uncontested that the rate provided for in the instrument was 18% per annum. (See Dkt. No. 14, Ex. A, ¶ 8). Therefore, the interest from October 17, 2011 until the date of the entry of this order shall be 18%. The original amount of $2,482,621.05, plus 18% interest from October 17, 2011 to the date of the entry of this order, yields a total amount of $2,886,642.12.[3]

Federal law, rather than state law, governs the calculation of post-judgment interest in diversity cases. See Forest Sales Corp. v. Bedingfield, 881 F.2d 111, 113 (4th Cir. 1989). The applicable federal statute provides for interest at a specified rate, commonly referred to as the legal rate. 28 U.S.C. § 1961. Therefore, interest on the judgment after the date of the entry of this order shall be the legal rate.

## V. CONCLUSION

The Court **GRANTS** the Plaintiff's Motion for Summary Judgment (Dkt. No. 13) and enters judgment against Defendant Dachs in the amount of $2,886,642.12, plus interest at the legal rate until fully paid. In the event that co-Defendant Tress is also held to be liable to Plaintiff, he will be jointly and severally liable with Defendant Dachs.

ENTER: This 11th day of September, 2012.

_____
Hon. James C. Turk
Senior United States District Judge

---

[3] Calculated using the North Carolina Court System Judgment Calendar at http://www.nccourts.org/Courts/CRS/JudgmentCalculator/.