CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 26 2013

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CITY NATIONAL BANK, a national )
banking association, as acquirer of )  Civil Action No.: 7:11-cv-73
certain assets from the Federal Deposit )
Insurance Corporation acting as )  Memorandum Opinion
receiver of Imperial Capital Bank, )
 )  By: Hon. James C. Turk
    Plaintiff, )  Senior United States District Judge
v. )
 )
MOISHE TRESS & YEHUDA )
DACHS, )
 )
    Defendants. )
 )

This matter is before the Court on City National Bank's Motion for Summary Judgment against Defendant Tress, ECF No. 53, and Defendant Tress's Motion for Summary Judgment. ECF No. 57.[1] This case concerns a $3,200,000.00 commercial loan that Tress personally guaranteed. The primary borrower defaulted and City National Bank seeks to enforce the guaranty. For the reasons set forth below, the Plaintiff's Motion for Summary Judgment is **GRANTED** and the Defendant's Motion for Summary Judgment is **DENIED**.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

In considering a motion for summary judgment, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). On December 27, 2006, Imperial Capital Bank loaned $3,200,00.00 to Roanoke Holdings, LLC ("Roanoke Holdings"). Defendants Tress and Dachs, on behalf of Roanoke Holdings, signed a promissory note ("Note") in favor of Imperial Capital

---

[1] This Court previously granted Plaintiff's unopposed Motion for Summary Judgment against Defendant Dachs. ECF No. 28.

1

Bank, promising to repay the loans on the terms and conditions stated therein. As a condition of Roanoke Holdings receiving the loan, Imperial Capital Bank also required personal guaranties from Defendants Tress and Dachs ("Guaranty"). Defendants agreed to pay the monies due under the Note, should Roanoke Holdings default.

On or after November 1, 2009, Roanoke Holdings ceased making payments on the Note and Defendants Tress and Dachs have not made any payments as personal guarantors of the Note.

Soon after making the loan, Imperial Capital Bank went into receivership and the Federal Deposit Insurance Corporation ("FDIC") was appointed the receiver for Imperial Capital Bank. ECF No. 59-1 ¶ 6. Thus, the FDIC became the owner of all of the bank's assets. 12 U.S.C. § 1821(d)(2)(A). City National Bank ("CNB") then purchased from the FDIC certain assets, including the Note and Guaranty at issue here. ECF No. 59-1 ¶ 8. CNB alleges that at all times relevant to this matter, as acquirer of certain assets from the FDIC acting as receiver of Imperial Capital Bank, it is and/or was the owner, holder, and/or person entitled to enforce the Note and Guaranty.

## II. LEGAL STANDARD

Summary judgment is appropriate where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when a rational factfinder, considering the evidence in the summary judgment record, could find in favor of the non-moving party. Ricci v. DeStefano, 557 U.S. 557, 586 (2009). Thus, summary judgment should be entered if the Court finds, after a scrupulous review of the record, that no reasonable jury could return a verdict for

the non-moving party. See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 958–59 (4th Cir. 1996).

When considering cross-motions for summary judgment, the court must apply the same standard and cannot resolve genuine issues of material fact. Monumental Paving & Excavating, Inc. v. Pa. Mfrs' Ass'n Ins. Co., 176 F.3d 794, 797 (4th Cir. 1999). The court should "consider and rule upon each party's motion separately and determine whether summary judgment is appropriate as to each under the Rule 56 standard." Id.

## III. ANALYSIS

Because the Court's jurisdiction is based on the diversity of the parties, the Court applies the choice of law rules of Virginia, the forum state. "Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances." Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 624 (4th Cir. 1999). Because the parties chose Virginia law in the contract,[2] the Court will apply Virginia substantive law.

Under Virginia law, a guaranty is

> an independent contract, by which the guarantor undertakes, in writing, upon a sufficient undertaking, to be answerable for the debt, or for the performance of some duty, in case of the failure of some other person who is primarily liable to pay or perform. In an action to enforce an independent contract of guaranty, the obligee is proceeding on the guaranty, not on the underlying note. Thus, to recover on a guaranty, the obligee must establish, among other things, the existence and ownership of the guaranty contract, the terms of the primary obligation and default on that obligation by the debtor, and nonpayment of the amount due from the guarantor under the terms of the guaranty contract.

---

[2] Under Section Fourteen (14) of the Guaranty, the guaranty "shall be governed by the laws of the jurisdiction in which the Land is located (the "Property Jurisdiction")." ECF No. 54, Ex. C, § 14. Under paragraph B of the Guaranty, terms not defined in the Guaranty are defined as in the Security Instrument. ECF No. 54, Ex. C, ¶ B. Under paragraph A of the Guaranty, the Security Instrument is the deed of trust executed by Roanoke Holdings, LLC, ECF No. 54, Ex. C, ¶ A, in the favor of the original lender to secure the repayment of the note. ECF No. 54, Ex. C, ¶ A. In section 1(t) of the Security Instrument, the term "Land" is defined as the land described in Exhibit A thereto, which is in Roanoke, Virginia. ECF No. 54, Ex. B, § 1(t). Therefore, the parties chose Virginia law in the Guaranty.

McDonald v. Nat'l Enters. Inc., 547 S.E.2d 204, 207 (Va. 2001) (internal citations omitted). Thus, to recover on a guaranty, an obligee must establish: 1) the existence and ownership of the guaranty contract; 2) the terms of the primary obligation; 3) default on that obligation by the debtor; and 4) nonpayment of the amount due from the guarantor under the terms of the guaranty contract. Id.

CNB has met its initial burden of showing the absence of a genuine issue of material fact as to each of the four McDonald elements in part by producing the guaranty contract bearing Tress's signature. See ECF No. 54, Ex. C. In the Guaranty, Tress chose to "absolutely, unconditionally and irrevocably guarantee[] to Lender the full and prompt payment when due." Id. at ¶ B, § 2. The terms of the Note and Guaranty are clear and unambiguously demonstrate the terms of the agreement. It is undisputed that Roanoke Holdings, LLC, defaulted on the loan. Defendant Tress' signature appears on the Note and the Guaranty and a notary public attested to his signature on the Guaranty. Finally, neither Tress nor Dachs as guarantors have paid the amount due under the terms of the Guaranty. The Court finds that Tress signed the personal Guaranty and is therefore personally responsible for the loan made to Roanoke Holdings, LLC.

In contrast, Defendant Tress makes three arguments in support of his Motion for Summary Judgment. First, Tress argues that defects in the Note's transfer, and thus chain of title, from Imperial Capital Bank to CNB void his obligation under the Guaranty. Relying on McDonald, Tress asserts that, "if there is no obligation on the part of the principal obligor, then there is also none on the guarantor." McDonald, 547 S.E.2d at 207. According to Tress, in order for CNB to become the lawful holder of the Note, Imperial Capital Bank should have,[3] but did not, properly endorse the Note. Because an obligation depends upon the existence of a lawful

---

[3] At the time that Tress argues the original lender should have endorsed the Note, the original lender had already gone into receivership; the FDIC was appointed receiver and sold assets, including the Guaranty, to Plaintiff.

4

holder of the Note, the absence of such lawful holder in this case extinguishes the obligation of the principal obligor (Roanoke Holdings) and consequently the guarantor Tress.

An analysis of McDonald, however, shows that an obligation in the context of a guaranty actually refers to the factual question of whether a debt remains unpaid. In McDonald, the defendant McDonald contended that the plaintiff purchaser of his note and guaranty from the original lender's receiver could not proceed on the guaranty agreement in part because the plaintiff did not have possession of the original Note. In response, the Virginia Supreme Court defined a guaranty under Virginia law as

> an <u>independent contract</u>, by which the guarantor undertakes, in writing, upon a sufficient undertaking, to be answerable for the debt, or for the performance of some duty, in case of the failure of some other person who is primarily liable to pay or perform. In an action to enforce an independent contract of guaranty, the obligee is proceeding on the guaranty, not on the underlying note. Thus, to recover on a guaranty, the obligee must establish, among other things, the existence and ownership of the guaranty contract, the terms of the primary obligation and default on that obligation by the debtor, and nonpayment of the amount due from the guarantor under the terms of the guaranty contract.

McDonald, 547 S.E.2d at 207 (emphasis added) (citations omitted) (internal quotation marks omitted). The Supreme Court of Virginia considered both the Note's possession and enforceability irrelevant to recovery under a guaranty, which is by definition an independent contract. The court continued:

> [i]n arguing otherwise, McDonald confuses the difference between the enforceability of the Note against [the original lender], and the question whether the debt has been extinguished, i.e., whether there is an obligation on the part of Lafayette. <u>The non-enforceability of a note as to the maker does not necessarily extinguish the obligation.</u> However, if there is no obligation on the part of the principal obligor, then there is also none on the guarantor.

<u>Id.</u> (emphasis added) (citations omitted). A discussion of the McDonald defendant's failure to pay follows the cited portion, further indicating that Tress' cited sentence means simply that if the debt has been extinguished by payment, the guarantor bears no obligation. In this case,

5

because the Roanoke Holdings debt remains outstanding, CNB as holder of the Guaranty can proceed against Tress as guarantor. Thus, just as the Supreme Court of Virginia held in McDonald, the fact that the CNB possibly cannot enforce the Note against Tress has no bearing on whether it can enforce the Guaranty, an independent contract.

Second, Tress argues that CNB cannot enforce the Guaranty against Tress because he did not expressly agree to the Note's assignment, which he claims is a modification of the Guaranty. Tress refers to Paragraph Thirteen (13) of the Guaranty, which provides that "[n]either this Guaranty nor any of its provisions may be [] modified, amended, . . . except by an agreement in writing signed by the party against which the enforcement of the [] modification, amendment, . . . is sought, and then only to the extent set forth in that agreement." ECF No. 58, Ex. 2, ¶ B, § 13. This clause, however, must be read with the whole Guaranty agreement, which reads in Paragraph Twelve (12) that the "Lender may assign its rights under this Guaranty in whole or in part and upon any such assignment, all the terms and provisions of this Guaranty shall inure to the benefit of such assignee to the extent so assigned." Id. ¶ B, § 12. It is clear, then, that Tress already expressly agreed that the original lender was authorized to assign its rights under the Guaranty.

Defendant Tress' last argument is based on the doctrine of res judicata. As stated previously, this Court sitting in diversity jurisdiction applies the laws of Virginia, and therefore Virginia's doctrine of res judicata governs in this case. See Blick v. Long Beach Mortg. Loan Trust 2005-WL3, 3:13-CV-00002, 2013 WL 1319369, at *2 (W.D. Va. Mar. 29, 2013). The underlying principle of res judicata is that

> "[e]very litigant should have opportunity to present whatever grievance he may have" but if given an opportunity to do so and "having failed to avail himself of it, he must accept the consequences." *Thus, the "effect of a final decree is not only to conclude the parties as to every question actually raised and decided, but as to*

6

> *every claim which properly belonged to the subject of litigation and which the parties, by the exercise of reasonable diligence, might have raised at the time."*

Starbucks Coffee Co. v. Shy, 734 S.E.2d 683, 689 (Va. Ct. App. 2012) (citations omitted) (quoting Brock v. Voith Siemens Hydro Power Generation, 716 S.E.2d 485, 488 (Va. Ct. App. 2011)). Res judicata thus facilitates certainty in the establishment of legal relations and efficient litigation while reducing the ability of parties to conduct repetitious and harassing litigation. Bill Greever Corp. v. Tazewell Nat'l Bank, 504 S.E.2d 854, 856 (Va. 1998).

The doctrine of res judicata in Virginia is governed by Rule 1:6 of the Rules of the Supreme Court of Virginia. Brock, 716 S.E.2d at 488. In order to assert res judicata under Rule 1:6, the party seeking to invoke the principle must show that

> (1) there was a prior claim for relief decided on the merits by a valid and final judgment; (2) the parties are identical or in privity with each other; and (3) the claim made in the later suit arises from the same conduct, transaction, or occurrence as the claim in the first suit.

Blick, 2013 WL 1319369, at *2; Va. Sup. Ct. R. 1:6(a). See also Caperton v. A.T. Massey Coal Co., Inc., 740 S.E.2d 1, 7 (Va. 2013) (discussing res judicata elements before Rule 1:6).

Tress argues that res judicata should apply to bar CNB from proceeding against Tress in the same lawsuit that CNB initiated against both co-defendants. Tress asserts that CNB seeks the same relief from Defendants Tress and Dachs in the same action on the same instrument, the Guaranty. Tress therefore claims that he is in privity with his co-defendant and Guaranty co-signer Dachs, and therefore the unopposed grant of summary judgment against Dachs before he was properly served constitutes a final judgment, precluding CNB from continuing the lawsuit against co-defendant Tress. Tress did not provide any supporting case law, however, to show that allowing preclusion during the original litigation constitutes an acceptable application of res

judicata in Virginia. After extensive research, this Court is unable to find even one instance of the doctrine of res judicata being applied within the same lawsuit.

In addition to the lack of supporting case law, Defendant Tress' res judicata argument fails because the grant of summary judgment against Tress' co-defendant during the lawsuit does not constitute a valid and final judgment under Virginia law. Tress points to Federal Rule of Civil Procedure 54(b) for determination of when the judgment became final, but Virginia rules of finality govern this diversity suit. In Virginia,

> a final order is an essential element for the res judicata bar to apply. City of Virginia Beach v. Harris, 523 S.E.2d 239, 244 (Va. 2000). "A decree is final only when it disposes of the whole subject, gives all the relief that is contemplated and leaves nothing to be done by the court in the cause except ministerial execution." Brooks v. Roanoke County Sanitation Auth., 114 S.E.2d 758, 760 (Va. 1960).

Close v. City of Norfolk, No. CL 09-4055, 2011 WL 2913225 (Va. Cir. Ct. Apr. 12, 2011). In this case, CNB initiated this action against both Defendant Tress and Dachs, and although the Court granted summary judgment to CNB as to Dachs, that decree did not dispose of the whole subject of the suit. Not all of the contemplated relief sought in the Complaint had been given; the original case remained pending as CNB continued to seek relief from co-defendant Tress. Res judicata by definition bars relitigation of the same claim, but the litigation of that claim was still in progress here. To allow the Defendant to assert res judicata when the original litigation has not concluded would be to deprive CNB of the opportunity every litigant should have to present his grievance. Starbucks Coffee Co., 734 S.E.2d at 689.

## IV. DAMAGES/LIABILITY

In its request for damages, CNB alleges that it has suffered damages in the amount of $2,482,621.05 as of October 17, 2011, with interest thereon at the contractual rate of eighteen (18) percent per annum until fully paid. The Court has examined the contract, ECF No. 14, Ex. A, the affidavit proving damages, ECF No. 14, and other relevant documents and finds the

CNB's request for damages to be the proper measure. Therefore, the Court grants summary judgment to CNB in the amount of $2,482,621.05 as of October 17, 2011.

CNB has stated that the contractual default rate of 18% is the proper measure of damages. In this diversity action, the Court also applies Virginia law as to prejudgment interest. See Hitachi Credit Am. Corp., 166 F.3d at 633 ("Virginia law governs the award of prejudgment interest in a diversity case."); United States v. Dollar Rent A Car Sys., Inc., 712 F.2d 938, 940 (4th Cir. 1983) ("[S]tate law applies to questions involving prejudgment interest in diversity cases.") (citing cases). The applicable Virginia statute governing prejudgment interest is Va. Code Ann. § 8.01–382. Whether prejudgment interest should be awarded under § 8.01–382 is a matter within the sound discretion of the district court. See Hannon Armstrong & Co. v. Sumitomo Trust & Banking Co., 973 F.2d 359, 369 (4th Cir. 1992); Dairyland Ins. Co. v. Douthat, 449 S.E.2d 799, 801 (Va. 1994). As to the proper interest rate, § 8.01–382 provides that for negotiable instruments, the rate of interest shall be that "rate specified in the instrument." It is uncontested that the rate provided for in the instrument was 18% per annum. See ECF No. 14, Ex. A, ¶ 8. Therefore, the interest from October 17, 2011 until the date of the entry of this order shall be 18%. The original amount of $2,482,621.05, plus 18% interest from October 17, 2011 to the date of the entry of this order, yields a total amount of $3,275,971.51.

Federal law, rather than state law, governs the calculation of post-judgment interest in diversity cases. See Forest Sales Corp. v. Bedingfield, 881 F.2d 111, 113 (4th Cir. 1989). The applicable federal statute provides for interest at a specified rate, commonly referred to as the legal rate. 28 U.S.C. § 1961. Therefore, interest on the judgment after the date of the entry of this order shall be the legal rate.

9

## V. CONCLUSION

The Court **GRANTS** the Plaintiff's Motion for Summary Judgment, ECF No. 53, and **DENIES** the Defendants Motion for Summary Judgment, ECF No. 57, and enters judgment against Defendant Tress in the amount of $3,275,971.51, plus interest at the legal rate until fully paid.

ENTER: This 26th day of July, 2013.

*/s/ James C. Turk*
Hon. James C. Turk
Senior United States District Judge